JOHN HOLLAND vs. ZABDIEL B. ADAMS & others.

Where real estate, devised to the widow of the testator for life, with remainder to his chil-
dren and the heirs of their bodies, is converted into money, either under a power of sale
conferred by the will, or under a resolve of the legislature passed on a petition of the
tenant for life and the remaindermen, reciting the devise, and praying for a sale and for
an investment of the proceeds, the income to be paid to the tenant for life, and at her
decease to the remainderman according to the will, the money, on the death of the
tenant for life, in equity, as well as at law, goes absolutely to the then tenant in tail.

SHAW, C. J.   This is a bill by the son of Samuel M. Hol-
land, deceased, to recover a sum of money placed in the hands
of the defendant Adams, under the circumstances hereinafter
stated.   The case is set down to be heard on bill and answers,
which disclose substantially the same facts set forth in the case
of *Holland* v. *Cruft*, just now decided, *ante*, 162.   Cases arising
out of this same will have formerly been before this court, and
will tend to illustrate these cases.   *Adams* v. *Cruft*, 14 Pick.
16.   *Holland* v. *Cruft*, 20 Pick. 321.

In this suit, the plaintiff claims one fifth part of the proceeds of
the sale of the mansion-house.   The will contains an authority,
and even a recommendation, to the administrator with the will
annexed, to sell all the real estate of the testator, and convey and
pass deeds of the same, after the payment of his debts, for better
investment.   For some reason, it seems to have been thought
that this authority was not sufficient; and in 1825 an application
was made to the legislature, and a resolve passed, authorizing
Edward Cruft, who in fact had become administrator with the
will annexed, to sell the mansion-house estate, first giving bond
at the probate office, and rendering an account after the sale;
the widow joined with the administrator thus specially em-
powered by the resolve, in selling the mansion-house; Cruft
rendered an account at the probate office, showing the net bal-
ance of the sale, after deducting necessary charges, to be
$15,593.52; and by a decree of the probate court, on the peti-
tion of the widow and children of the testator, Cruft was
directed to invest the proceeds of the sale in the Massachusetts
Hospital Life Insurance Company, for the use of the widow for

life, and upon her decease, the principal to be paid to the trustees under the will of John Holland, to be distributed according to the provisions of the will. Three trustees were appointed for certain purposes under said will, two of whom declined the trust, and Adams only accepted. This deposit with the Hospital Life Insurance Company remained during the life of the widow, and then was paid out according to the terms of the decree, to the defendant Adams, and he rendered his account thereof at the probate office.

The answer of Adams admits the material facts, and that demand has been made by the plaintiff for the money, which he has declined paying until ordered by the court, whose protection he seeks; sets up a claim made by Aaron D. Weld under an assignment from Samuel M. Holland; also a claim of Laura P. Holland, as administratrix of the estate of Samuel M. Holland; a claim of the other three children of Samuel M. Holland; and submits all their respective claims to the court. Aaron D. Weld makes his answer, and sets forth his claim as assignee of Samuel M. Holland. Laura P. Holland makes her answer, and as administratrix of the estate of Samuel M. Holland, and in behalf of his creditors, claims the sum in the hands of the trustee, for the benefit of his estate.

Most of the principles of law and equity necessary to the decision of this case have been decided in the cases above cited, and more especially in the case of *Holland* v. *Cruft*, argued and decided with the present case.

The fund in the hands of the trustee proceeded wholly from the sale of the mansion-house. The mansion-house was devised to the wife for life, remainder to the five children severally, one fifth each, in tail. It was rightfully converted into personal property, either by the power given by the will, or by the license granted by the resolve; but, in either case, not for any purpose of changing the destination of the property in beneficial use, but for better investment. The proceeds, first in the hands of the administrator, afterwards in the Hospital Life Insurance Company, and again when paid out by them to Adams, the trustee, pursuant to the decree of the probate court, were, in

terms, to be disposed of, appropriated and beneficially applied, as the estate would have been had it remained specifically under the devise during the life of the widow, who was tenant of the freehold.   As real estate, in the event which has happened—-that of the tenant in tail in remainder dying during the life of the tenant for life—-the right would have descended to the oldest son and heir in tail of Samuel M. Holland, John Holland, the plaintiff; and he, being the first to take the estate tail in possession and in beneficial enjoyment, would have been entitled to take the money absolutely.   Had it been given as personal property to one in tail, it would have been an absolute gift.   Money or personal property cannot pass by descent; the words of limitation would have been merely void.   So if personal property were given to one for life, then to another and his heirs, either general, or heirs of the body, the limitation would be void, and the gift to the first taker, after the use for life, an absolute gift. But the difference here is, that it was given as real estate, and converted into personal for a special purpose not affecting the disposition made of it by the devisor.   This real estate was capable of being given and was given in tail, and, but for the conversion, would have vested as an estate tail, and the rules of real estate must regulate it until it reaches a party entitled to hold it beneficially, and then it is an absolute gift, because the limitation could carry it no further.

It was argued that, when real estate is once converted into money, for any purpose, it becomes personal to all purposes, and from the time of such conversion will pass as personal property, and the case of *Emerson* v. *Cutler*, 14 Pick. 108, was cited. But that affords no authority for any such general position.   On the contrary, it was the sale of the vested real estate of a minor by her guardian, under license, and it was held, we think rightly, that the proceeds became her personal property.   It was not the less her property, because she was a minor under guardianship ; though that afforded a good reason why she did not conduct the business personally.   The estate was hers absolutely, and therefore, from the moment of the sale, the proceeds, in money or securities, were her property and her choses in action, as owner.   The

one species of property replaced the other. It is exactly within the authority of *William* v. *Hichborn*, 4 Mass. 189.

As a general rule to be deduced from the cases, we think that in case of such conversion of real into personal estate, to stand in place of the real, as more beneficial to the parties, without changing the beneficial destination, the character thus impressed on the money will attach to it, until it reaches one who, if it had remained real estate, would take it beneficially, that is, to his own use absolutely, or with a power, like that of tenant in tail in possession, to dispose of it absolutely, or make it his own to all purposes, and it will then be his absolutely.

It was argued, that as the widow, holding the life estate, and Samuel M. as the next tenant in tail, could have united to bar the entail, and to convert the estate to their own use absolutely, by uniting in a deed of conveyance of the same in fee, they may be considered as having done the same thing, equitably, by uniting in a petition to the legislature to authorize and license a sale of the mansion-house estate, and by the sale made in conformity thereto. But we think, however plausible this argument may be, that it is not sound, and will not sustain the conclusion, for several reasons :

1. Because Cruft had full power under the will to sell and convert the estate into money, without a license, for the purpose indicated in the will, and not for the purpose of defeating it; and perhaps there is now no sufficient ground for holding that the title, made by the deed of Cruft to the purchaser, depends upon the license granted by the legislature, rather than upon the power given by the will.

2. But in the second place, we are of opinion, that the tenant for life and the remainderman in tail, in their petition, and the legislature, in their resolve, manifested no intention to bar the entail, or otherwise defeat any of the purposes of the will; on the contrary, they prayed that, when sold, the proceeds might be placed in a fund, the income to be paid to the widow during her life, and after her decease, the fund to be divided among the children of said John Holland, (all of whom were petitioners,) as named in said will, " conformably to the provisions thereof."

This was a disposition of the fund, the proceeds of the real estate, in exact conformity with the directions of the will respecting the real estate. ˙ Whereas, had it been the intent of the tenant for life and the respective tenants in tail to suffer an equitable recovery, or in any way to bar the entail, there was nothing to prevent their conveying the estate in fee simple, and dividing the proceeds immediately, in any proportions agreed on between them ; or if they thought the authority of a legislative resolve necessary, there was nothing to prevent them from petitioning accordingly.

3. Because the petition, to which the resolve refers for reasons for granting the authority, recited the devise of the estate to the wife for life, with remainder to the five children and the heirs of their bodies, which was a plain remainder in tail; and the legis,ature thus understanding the nature of the bequest, if they had the power, manifested no intention to authorize any different disposition of the proceeds, from that which the will had made of the real estate.

4. Because, as the law then stood, it required a strict compliance with the terms of the statute, to bar an entail. These were, a deed executed in presence of two witnesses, made upon a good or valuable consideration, by the tenant for life, and the next remainderman in tail, and acknowledged and recorded. These were necessary, in form as well as substance, to bring the case within the operation of the statute, and render the deed as effectual to bar the entail as a common recovery suffered by the same persons, at common law. And it is to be considered, that, although the distribution of the money into which the real estate was converted is a question of equity, yet when such equity depends on a question of title, such question of title depends upon rules of law.

Another argument somewhat relied on is, that the testator contemplated that the estate might perhaps be converted into money; that, if it had been a bequest in money, the gift of the use of the money to the wife, for her life, would have been good : that the gift over must have been an absolute gift ; that the limitation to his children and the heirs of their bodies would have

been void; and therefore it would have been an absolute gift to the children. Had it been a bequest of personal property as personalty, there would have been great force in the argument, because he must have been presumed to know the law, and to know the legal effect of such a bequest. But in fact it was real estate, and was devised as such; it might, notwithstanding the power given to sell, have remained real estate, and then the law would give it a certain direction, and as no other direction was given to it, if converted into money, the testator's intent must be presumed, that the law of real estate was to govern. The argument assumes, that the testator understood " children" and " issue " to be equivalent, and therefore giving it to children and their issue was equivalent to giving it to children generally. But it is far otherwise ; issue, that is, heirs of the body, embrace all one's lineal descendants indefinitely. Directing, therefore, that, after the death of his wife, the estate given by him, or the fund, which for greater security, convenience and productiveness, is to stand in the place of it, shall go to his children and the heirs of their bodies, manifests a clear intent that, if the child is dead, leaving children or grandchildren, the testator's own descendants, it shall go to them rather than to the creditors or collateral heirs of the deceased child. We can perceive no evidence, and no presumption, that such intent would vary upon the contingency that the estate should be changed from real to personal. He must have known that nothing done by the son, without the concurrence of the widow, tenant for life, could defeat the right of the grandchild, in the case supposed—of the death of the son in the lifetime of the widow—and he might well rely on her discretion so to exercise her power, as to aid rather than defeat his expressed purpose, that if any child died before the time fixed for coming into possession and enjoyment of the property, it should go to a grandchild or more remote descendant, rather than to creditors or assignees, or collateral heirs of the son, strangers to his own lineage.

The court are therefore of opinion that John Holland, the plaintiff, the son and heir in tail of Samuel M. Holland, deceased, is entitled to the money in question, against the claims of the

assignees and administratrix, and all other persons claiming the same through or under Samuel M. Holland, and also against the claims of his sisters, the other children of the said Samuel M. Holland.          *Decree accordingly.*

*C. P. Curtis & E. Merwin,* for the plaintiff.

*S. E. Sewall & G. S. Hale,* (*F. O. Watts* with them,) for the defendants.